I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE.

DATED: July 23, 2012

DEPUTY CLERK

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT
JUL 2 3 2012
CENTRAL DISTRICT OF CALIFORNIA
BY
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN D. EDWARDS,<br>Plaintiff,<br>v.<br>CALIFORNIA STATE PRISON LOS ANGLES COUNTY, et al.,<br>Defendants. | Case No. CV 09-02584 GAF (AN)<br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT WITH LEAVE TO AMEND |

In accordance with the Ninth Circuit's Order [19] and corresponding Mandate [20], the Court has screened the prisoner civil rights complaint brought by plaintiff Brian D. Edwards ("Plaintiff"), who is proceeding in pro se and has been granted leave to proceed in forma pauperis ("IFP"). (04/22/09 Order [3].) For the reasons discussed below, the complaint is dismissed with leave to amend in the time and manner directed below.

**Background**

Plaintiff is a California state prisoner (inmate #K49721) proceeding in pro se. On April 22, 2009, the Court granted Plaintiff's IFP request [1] and allowed him to file his pending prisoner civil rights complaint [3] that is brought pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"). The complaint is 21 pages in length and is accompanied by 437 pages of exhibits. Except for the introductory allegations at pages 1 and 2, the subsequent allegations

are set forth in 128 sequentially numbered paragraphs.

At the time Plaintiff commenced this action, Plaintiff was confined at the High Desert State Prison, however, his claims are directed at alleged deprivations that allegedly arose at a prior place of confinement, the California State Prison, Los Angeles ("CSP-LAC"). (Complt., Intro., ¶ 4.) Further, the official records of the California Department of Corrections and Rehabilitation ("CDCR"), which are available on the internet at www.cdcr.ca.gov, show Plaintiff is now confined at the Kern Valley State Prison.

The complaint purports to raise five separate § 1983 claims for damages, declaratory relief and injunctive relief, which are described and discussed more fully below. (*Id.*, Intro. at 1:24-26.) The complaint is brought against CSP-LAC and the following 20 CSP-LAC state employees (not all of whom are named in the complaint's caption): (1) Warden F. B. Haws; (2) Capt. C. Fortson; (3) Sgt. Robbin; (4) Sgt. Thomas; (5) Sgt. Savage; (6) Sgt. Robertson; (7) Sgt. Diaz; (8) correctional officer ("c/o") J. Curiel; (9) c/o T. Jerid; (10) c/o S. Redding; (11) c/o Riley; (12) c/o R. Morales; (13) c/o Franscia; (14) c/o Mikel; (15) c/o Duenaz; (16) Registered Nurse ("RN") M. Barratto; (17) RN Mischka; (18) Licensed Vocational Nurse ("LVN") Daniel; (19) LVN B. Ingram; and (20) RN O'Conner; (¶¶ 5-10, 32, 52, 54, 62, 81, 111.) Each named individual defendant is sued in his or her official and individual capacities. (*Id.*, ¶ 11.) The five § 1983 claims are based upon the First, Eighth, Thirteenth, and Fourteenth Amendments. (*See id.*, Intro. at 1:25-26; ¶ 123.)

**Discussion**

**1. Standard of Review**

**1.1 IFP Prisoner Complaints**

Pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), a district court must dismiss an IFP action "at any time" the court finds a plaintiff's allegation of poverty is untrue, or where the complaint raises a claim that is frivolous, malicious, fails to state a claim on which relief may be granted or seeks monetary relief from a defendant that is immune from such relief. 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154, 119 S. Ct. 1058 (1999). This is true

regardless of whether the filing fee has been paid in whole or in part. *Id.*

Likewise, under 28 U.S.C. § 1915A, a prisoner civil rights complaint seeking redress against a governmental entity or officer or employee of a governmental entity must be dismissed before or after docketing where the complaint, in whole or in part, raises a claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from suit. A prisoner civil rights complaint may also be dismissed sua sponte "if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. §1997e (c)(1).

The standard for determining whether an IFP civil rights complaint is subject to dismissal for failing to state a claim upon which relief may be granted is the same standard that is used for reviewing a motion to dismiss made pursuant to Fed. R. Civ. P. 12 ("Rule") (b)(6). *Barren*, 152 F.3d at 1194. The Court may disregard factual allegations that are contradicted by the facts established by reference to exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Rule 12(b)(6) requires a plaintiff to state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff's factual allegations support reasonable inferences that could support a finding of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-680, 129 S. Ct. 1937 (2009). The Court must follow a two-prong approach in resolving a Rule 12(b)(6) motion under *Twombly*. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*(quoting *Twombly*, 550 U.S. at 555). This is not a new concept. *See Barren*, 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.") "In

keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal.*, 556 U.S. at 679. Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* This determination is context-specific, requiring the Court to draw on its experience and common sense; there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

Although pro se pleadings are construed liberally, *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir.1990), the pro se plaintiff must still allege facts, not simply conclusions, that show an individual defendant was personally involved in unconstitutional deprivation. *Barren*, 152 F.3d at 1194. Where a pro se litigant's claim is dismissed for failure to state a claim, leave to amend should be granted unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

**1.2    Section 1983**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990) (quoting § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

///

///

**2. Plaintiff's Section 1983 Claims**

**2.1 Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against state agencies. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (stating that Board of Corrections is agency entitled to immunity); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity). CSP-LAC is a state prison operated by the CDCR, a state agency. Accordingly, the Eleventh Amendment bars Plaintiff's § 1983 claims for damages against CSP-LAC.

The Eleventh Amendment also bars § 1983 claims for damages against state officials acting in their official capacities because state officials sued in their official capacities for damages are not persons for purposes of § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24, 117 S. Ct. 1055, 137 L. Ed. 2d. 170 (1997); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Consequently, to the extent Plaintiff's § 1983 claims for damages seek relief against each of the state employees named as defendants in their official capacities, the official capacities claims are frivolous, malicious, fail to state plausible § 1983 claims for relief, and are brought against persons who are immune from suit.

**2.2 Claims for Declaratory and Injunctive Relief**

Where a prisoner is challenging conditions of confinement and is seeking equitable relief, the prisoner's transfer to another prison renders requests for declaratory and injunctive relief moot absent some evidence of an expectation of being transferred back. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975) (holding transfer to another prison moots § 1983 claims for declaratory and injunctive relief brought against defendants employed by transferor prison); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (same as to § 1983 claim for injunctive relief).

All of Plaintiff's condition of confinement claims arose at CSP-LAC, and all of the alleged claims are brought against CSP-LAC personnel. Plaintiff's allegations undeniably establish that, by the time he commenced this action, he had been transferred to the High

Desert State Prison and was no longer confined at CSP-LAC. And, as discussed above, Plaintiff has since been transferred to the Kern Valley State Prison from the High Desert State Prison. None of the allegations in Plaintiff's complaint show he can reasonably be expected to be transferred back to CSP-LAC.

Accordingly, Plaintiff's Eighth Amendment claims for injunctive and declaratory relief are frivolous, malicious, and fail to state a claim for relief.

**2.3 First, Thirteenth, and Fourteenth Amendment Claims (Claim V)**

In Claim V, Plaintiff alleges "by denying me access to look at a nake[d] woman" and "making love to a grown woman[,]" "the State is trying to force me to be gay" and that it "is a form of slavery which is a violation of my 13th amendment [right against involuntary servitude.]" (Complt., ¶¶ 113-114; 116.) Plaintiff also appears to claim denying him access to look at a naked woman violates his rights under the First and Fourteenth Amendments. (*Id.*, ¶¶ 113-114, 120, 122.)

Claim V is subject to summary dismissal for several reasons.

First, none of Claim V's supporting allegations show that it is brought against any of the individual defendants. Also absent are any allegations that plausibly show any of the named defendants were personally involved in the alleged deprivations. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (stating a § 1983 claim requires a plaintiff to allege facts showing "personal participation in the alleged rights deprivation"); *see also Taylor*, 880 F.2d at 1045 ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."); *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient" to state a claim upon which relief may be granted).

Second, even if Claim V had been expressly brought against any of the named defendants, Plaintiff would not be entitled to relief under the Thirteenth Amendment, which provides in relevant part, "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United

States . . . ." U.S. Const. amend. XIII, § 1. Consequently, it is well-settled that incarceration pursuant to a valid conviction raises no problem of involuntary servitude under the Thirteenth Amendment. *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) ("The Thirteenth Amendment does not prohibit involuntary servitude as part of imprisonment for a crime."). Plaintiff has alleged no facts that plausibly show his current "31 [years] to life" (Compl., ¶ 113) prison term and corresponding state confinement arise from an invalid conviction.

Third, Plaintiff is not entitled to § 1983 damages for these alleged deprivations under the First Amendment's Freedom of Expression or Association Clauses. *See Mauro v. Arpaio*, 188 F.3d 1054, 1058-63 (9th Cir. 1999) (en banc), *cert. denied*, 529 U.S. 1018, 120 S. Ct. 1419, 146 L. Ed. 2d 311 (2000) (en banc) (finding county jail policy prohibiting jail inmates from possessing "sexually explicit material[,]"which included "materials that show frontal nudity and encompassed "personal photographs, drawings, and magazines and pictorials that show frontal nudity," was reasonably related to legitimate penological interests under the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) ("*Turner* factors") and did not violate pretrial detainee's First Amendment rights); *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) (affirming dismissal of Arizona prisoner's First Amendment challenge to prison regulation banning possession of sexually explicit materials (issues of *Gallery* and *Penthouse* depicting penetration); *Nelson v. Woodford*, 249 Fed. Appx. 529 (9th Cir. 2007) (affirming dismissal of California prisoner's First Amendment claim based upon prison's denial of his access of issues of *Esquire* magazine with depictions of frontal nudity pursuant to 15 C.F.R. §§ 3006(c)(15) and (17) (prohibiting a prisoner's possession of "obscene" and "sexually explicit" materials) because regulations were reasonably related to legitimate penological interests under the *Turner* factors; *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (en banc) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits.").

Fourth, Plaintiff is not entitled to § 1983 relief under the Fourteenth Amendment's Due Process Clause because the vague and conclusory allegations in the complaint fail to set forth facts that establish the alleged deprivations infringe upon a constitutionally protected liberty

interest and impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *Gerber*, 291 F.3d at 621.

For the reasons discussed above, the Court finds Claim V must be dismissed because it is frivolous, malicious, fails to state a plausible § 1983 claim for damages. Further, because it is absolutely clear the deficiencies cannot be cured by amendment, *Weilburg*, 488 F.3d at 1205, the dismissal should be without further leave to amend.

**2.4 Eighth Amendment Claims (Claims I, II, III, and IV)**

Liberally construed, the gravamen of the non-conclusory factual allegations that are not contradicted by the complaint's exhibits establish Claims I, II, III, and IV purport to raise Eighth Amendment claims, as applied to the state defendants by the Fourteenth Amendment.

"[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d. 156 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9. To raise a plausible § 1983 claim for damages based upon an Eighth Amendment violation regarding a condition of confinement, a state prisoner must satisfy two requirements: (1) "the deprivation alleged must be, objectively, 'sufficiently serious[;' that is,] a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[;]'" and (2) the prison official must act with a "sufficiently culpable state of mind[;]" that is, a subjective intent to impose the deprivation "for the unnecessary and wanton infliction of pain" or a "deliberate indifference" to a serious threat to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834-37, 114 S. Ct. 1970 (1994); *Toguchi v. Chung*, 391 F.3d. 1051, 1056-57 (9th Cir. 2004) ("To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test.").

**2.4.1 Claim I**

Claim I is brought against Sgt. Robbin, c/o Redding, c/o Riley and LVN Daniels. (Compl., ¶ 32.) The alleged deprivations committed by each of these defendants are pled in a vague manner that largely requires the reader to surmise the precise nature of the Eighth Amendment violation. Liberally construed, and after disregarding the allegations that are not conclusory or contradicted by the complaint's exhibits, *see Iqbal*, 556 U.S. at 678, *Durning*, 815 F.2d at 1267, the Court finds the allegations for Claim I appear to raise Eighth Amendment claims for verbal abuse, unsanitary cell conditions, medical indifference, and excessive force based upon the following facts.

On June 19, 2007, Plaintiff was transferred from Calipatria State Prison to CSP-LAC for a mental health evaluation, taken to the administrative segregation unit, and initially placed in a cell (A-4 129) "where the walls and mattress were covered with feces." (Compl., ¶¶ 12-13.) Plaintiff complained to LVN Daniels about the unsanitary condition of his cell, his medical and health problems, and about "feeling suicidal." (*Id.*, ¶ 15.) LVN Daniels responded promptly by informing Sgt. Robbin who, in turn, dispatched Redding and Riley to remove Plaintiff from his cell and bring him to Sgt. Robbin's office. (*Id.*, ¶¶ 17-20.) Plaintiff alleges c/o Redding "verbally disrespect[ed]" him by asking, "do you know what prison [you're] at boy?" (*Id.*, ¶ 18.) Plaintiff told Sgt. Robbin he felt suicidal and, in response, Sgt. Robbin told Plaintiff if he did not feel like living anymore, then he should just take a razor, cut his wrist, and kill himself. (*Id.*, ¶¶ 22-23.) After being escorted to his cell, c/o Redding removed Plaintiff's handcuffs and, as he "forced" Plaintiff into the cell, Plaintiff brushed against the honeycombed metal mesh covering the door, which opened an existing wound on his lower arm and right finger. (*Id.*, ¶¶ 25-26). Plaintiff "hollered from the pain as blood flowed from the wounds and [he] called for medical attention" but c/o Redding just walked away. (*Id.*, ¶ 26.) LVN Daniels, who witnessed this event, also refused to give Plaintiff immediate medical attention. (*Id.*, ¶ 27.) Later that same day, Plaintiff was taken to a holding cell where he was introduced to an inmate named Burton to determine if they would be compatible cell mates. (*Id.*, ¶ 31, Ex. A.) Burton saw blood drip from Plaintiff's left arm onto

the floor. Four days later, on June 23, 2007, Plaintiff was treated for his injuries by a psychiatric tech. (*Id.*, ¶ 28.)

**Verbal Abuse**

To the extent Plaintiff appears to claim Sgt. Robbin and c/o Redding violated his Eighth Amendment right against cruel and unusual punishment by verbally abusing, harassing, or threatening him in the aforementioned manner, Claim I fails to state a plausible claim for relief because it is well-settled that verbal harassment and verbal threats do not violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir. 1987) (harassment); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (threats); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983). Further, Plaintiff did not sustain any physical injuries as a result of the alleged verbal abuse, intimidation or threats.

**Unsanitary Cell**

In *Anderson v. County of Kern*, 45 F. 3d 1310 (9th Cir. 1995), the plaintiffs, suicidal inmates, complained of an unsanitary "safety cell," which they described as dirty and smelling bad. *Id.*, 45 F.3d at 1314-15. The inmates were occasionally shackled to a grate over a pit toilet encrusted with excrement and urine; they were placed in the cells naked or clothed only in paper garments; they also complained about temporary deprivation of sinks, stand-up toilets, and beds for short periods of time. *Id.* at 1313-14. The periods of this confinement ranged from 90 minutes to all night. *Id.* at 1313. The Ninth Circuit held that the conditions of an unsanitary safety cell did not rise to the level of a constitutional violation where there was no evidence showing there was a risk of physical harm caused by the unsanitary conditions of the safety cell, and the alleged lack of sanitation was not severe and prolonged. *Id.* at 1313-15. In *Hendon v. Reed*, 2011 WL 2224720 (E.D. Cal. June 7, 2011) a district court relied on *Anderson* to find the plaintiff's claims that his own feces were thrown on him and that on another occasion urine was thrown on him did not demonstrate a prolonged or severe deprivation that would rise to the level of a constitutional violation. *Hendon*, 2011 WL

2224720, at *7; *see also McCarter v. County of San Bernardino*, 420 Fed. Appx. 739, *740 (9th Cir. 2011), *citing Anderson*, 45 F.3d at 1314 (finding district court properly granted summary judgment on former prisoner's Eighth Amendment unsanitary confinement claim because he failed to show he suffered from any physical injury and, citing *Anderson*, indicating the alleged lack of sanitation must be severe and prolonged); *Hunt v. Downing*, 112 F.3d 452, 453 (10th Cir. 1997) (no Eighth Amendment claim where inmate made to sleep one night on urinated sheets while detained in a state juvenile facility as punishment for intentionally soiling the bed covers); *Greene v. Mazzuca*, 485 F. Supp.2d 447, 451 (S.D.N.Y. 2007) (claim that inmate was yelled and spit at, and threatened with time in SHU does not rise to level of a constitutional violation).

In light of the foregoing, the Court finds Claim I fails to state a plausible Eighth Amendment unsanitary cell claim under § 1983. As a threshold matter, Plaintiff has failed to allege facts that show any of the defendants were personally involved or participated in the decision to place him in the subject cell. Nor has Plaintiff alleged facts that show the alleged unsanitary conditions were intended to punish or were excessive in relation to a non-punitive purpose. Further, the factual allegations establish Plaintiff's confinement in the unsanitary cell was not prolonged or severe. At best, the allegations only show some unnamed prison officials were negligent in having Plaintiff temporarily placed in the unsanitary cell, however, neither negligence or gross negligence constitute deliberate indifference. *Farmer*, 511 U.S. at 835.

**Excessive Force**

The Supreme Court recently reaffirmed the principle that, whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the "core judicial inquiry" announced in *Whitley v. Albers*, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) still controls -- "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm[,]" "not whether a certain quantum of injury was sustained." *Wilkins v. Gaddy*, --- U.S. ----, 130 S. Ct. 1175, 1178 (2010) (per curiam) (quoting *Hudson,* 503 U.S. at 7).

Nonetheless, the *Wilkins* Court emphasized "[t]his is not to say that the absence of 'serious injury' is irrelevant to the Eighth Amendment inquiry." *Id.*, 130 S. Ct. at 1178. Rather,

> ". . . the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid.* (quoting *Whitley,* 475 U.S. at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id.* Consequently, in determining whether the nature of the force is excessive, courts should consider the "extent of injury . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Claim I fails to state a plausible Eighth Amendment excessive force claim against any of the defendants. The only defendant who is mentioned in Claim I to have applied force is c/o Redding, and the allegations are vague and conclusory with respect to the nature and amount of force applied. More importantly, Plaintiff has failed to allege or show that c/o Redding applied the force in a malicious and sadistic manner. To the contrary, Plaintiff's allegations indicate the force c/o Redding used was in the nature of an isolated, de minimis

push or a shove, and that it was applied in a good-faith effort to restore or maintain discipline -- compel Plaintiff to enter the cell. None Plaintiff's prison medical records indicate Plaintiff suffered or sustained any serious injury as a result of the alleged force, and that it did not come close to consisting of the type of force that was "repugnant to the conscience of mankind" or constitutionally excessive under the Eighth Amendment. *Hudson*, 503 U.S. at 9-10.

**Inadequate Medical Attention**

"Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (citation omitted). The deliberate indifference to serious medical needs standard has an objective and a subjective component. *Hudson,* 503 U.S. at 8-10. The objective component generally is satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.; Lopez v. Smith,* 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc). The subjective component focuses only on the defendant's mental attitude. *Toguchi*, 391 F.3d at 1057 (*citing Farmer*, 511 U.S. at 839.) "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Id.*; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs ., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

To the extent Plaintiff appears to claim c/o Redding and LVN Daniels were deliberately indifferent to his medical needs, it fails to raise a plausible claim for relief against either of these defendants because his allegations and attached medical records fail to show the reopening of his existing wound was sufficiently serious that the failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain.

**2.4.2. Claim II**

The second claim is brought against Sgt. Robertson, RN Mischka, Sgt. Diaz and RN Conner. (Complt., ¶¶ 62.) The claim arises from Plaintiff's assignment to two separate cells that occurred on December 4, 2007, and December 13, 2007, respectively. He does not allege these four defendants were responsible for these cell assignments.

He alleges, on December 4, 2007, he was assigned without shoes to cell 232, which was located on the top tier of CSP-LAC's administrative segregation unit ("ASU") in facility A-4. (*Id.*, ¶¶ 33, 43.) He alleges cell 232, along with the top tier of the ASU in A-4, was flooded with water contaminated with rodent feces and had a foul smell that gave him a headache and made him nauseous. (*Id.*, ¶¶ 33-36.) Plaintiff's allegations indicate he is claiming Sgt. Robertson was deliberately indifferent because Sgt. Robertson: (1) took four hours to have Plaintiff's cell cleaned and to provide Plaintiff with some plastic gloves, (2) did not offer to allow Plaintiff to shower until the next day, and (3) required Plaintiff and other inmates on the top tier eat their dinners in their cells. (*Id.*, ¶¶ 36, 37, 40-43, 58, 62.) Plaintiff further appears to claim, on the same date, RN Mischa was deliberately indifferent because she denied his two requests for unspecified medical attention that he was seeking for his headache and nausea. (*Id.*, ¶¶ 35, 39, 58, 62.) The next day, December 5, 2007, Plaintiff was given cleaning products to remove the smell and decontaminate his cell. (*Id.*, ¶ 44.)

Plaintiff alleges that, on December 13, 2007, as a result of his complaints about the conditions of cell 232, he was transferred to bottom tier cell 125 in an ASU that was located in another building (facility A-5) and had a rodent problem. (*Id.*, ¶¶ 47-51). The next day, December 14, 2007, while RN O'Conner was dispensing medication with a correctional officer who is not named as a defendant, Plaintiff handed RN O'Conner a sick call slip and showed her some of the rat feces. (*Id.*, ¶¶ 51-52.) On the same date, Plaintiff informed Sgt. Diaz about the rodent problem, and Sgt. Diaz responded by telling Plaintiff to ask his section officer for some disinfectant. (*Id.*, ¶ 54.) Plaintiff appears to claim RN O'Conner and Sgt. Diaz were deliberately indifferent by engaging in their aforementioned conduct.

///

This unsanitary cell claim fails to raise a plausible § 1983 claim because Plaintiff's allegations establish the alleged deprivation was temporary as opposed to severe and prolonged, and that it did not cause him any serious physical harm. *See Anderson*, 45 F.3d at 1313-15; *Jackson v. California*, No. CIV S-04-0983 LKK GGH P, 2007 WL 210430, *16 (E.D. Cal. Jan. 26, 2007) (finding Plaintiff's claim that defendants confined him in an unsanitary cell for six or seven days without providing Plaintiff with requested cleaning supplies failed to state § 1983 claim); *see also*, *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S. Ct. 2565 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.") Further, the allegations also show none of the defendants were deliberately indifferent because Plaintiff was provided with gloves and cleaning products within a reasonable amount of time after he complained.

**2.4.3. Claim III**

The third claim is brought against LVN Ingram. Plaintiff asserts, on December 18, 2007, LVN Ingram was deliberately indifferent to him because she: (1) initially gave Plaintiff the wrong stomach medication and did not provide him with the correct medication until the next day; (2) failed to give Plaintiff new triamciholone and albuterol inhalers for his asthma condition; (3) gave Plaintiff two used inhalers that she took back in response to Plaintiff's complaints about them being used without providing him any inhalers for two days; (4) on December 20, 2007, falsely assured Plaintiff that she had ordered new inhalers for him. (*Id.*, ¶¶ 63-80.) Plaintiff alleges, on December 20, 2007, he had an asthma attack and was provided with new inhalers by another LVN who is not named as a defendant. (*Id.*, ¶ 78.)

Claim III is frivolous, malicious, and fails to state a claim for relief because it fails to set forth any specific factual allegations to support his conclusory deliberate indifference allegations as required by *Iqbal*, and his specific allegations fail to show that he sustained any sort of permanent or serious physical injury as a result of being without inhalers for two days as a result of LVN Ingram's alleged acts and omissions. At best, Plaintiff's allegations show LVN Ingram was negligent, however, as discussed above, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

Amendment rights. *Toguchi*, 391 F.3d at 1057 (*citing Farmer*, 511 U.S. at 839.); *McGuckin*, 974 F.2d at 1059.

**2.4.4. Claim IV**

The fourth claim is brought against Sgt. Thomas, LVN Daniel, and c/o Jerid, c/o Franscia, c/o Mikel, and c/o Duenaz. (Compl., ¶ 111). Liberally construed, the gravamen of Plaintiff's non-conclusory allegations indicate he is claiming that, on February 8, 2008, these defendants allegedly violated Plaintiff's Eighth Amendment right against cruel and unusual punishment in the following manner: (1) Sgt. Thomas did not move Plaintiff to a different Ad-Seg. cell as promised; (2) LVN Daniel did not give him adequate medical attention for a small cut Plaintiff inflicted upon his left hand by "banging on the door" of his cell to get the attention of a correctional officer to complain about his cell; (3) in an effort to push Plaintiff's hand back through the food port of his cell door, c/o Jerid "assaulted" Plaintiff by "slamming" Plaintiff's injured left hand on the food port repeatedly, failed to get Plaintiff medical attention, and referred to Plaintiff as a "bitch" several times; (4) c/o Mikel, c/o Duenaz, and c/o Franscia "looked on while this assault happen[ed] to me; and (5) c/o Franscia gave Plaintiff "a piece of cotton for a mattress" that did not have a cover on it and was "unsanitary." (*Id.*, ¶¶ 82-111.)

Plaintiff's claim against Sgt. Thomas is frivolous, malicious, and fails to state a plausible § 1983 claim because ". . . inmates do not have a constitutional right to be incarcerated at a particular correctional facility or in a particular cell or unit within a correctional facility." *Rodriguez v. Cate*, No. CV 10-8142 GHK (SH), 2012 WL 2458114, at *10 (C.D. Cal. June 12, 2012); *see also Montanye v. Haymes*, 427 U.S. 236, 242-43, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976) (finding no constitutional right to be housed at a particular state prison); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) (no constitutionally-protected interest in staying at a particular institution); *Olim v. Wakinekona*, 461 U.S. 238, 246, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) (emphasizing "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within or outside of the state of conviction); *Sandin*, 515 U.S. at 483-84 (finding no

constitutionally protected interest in remaining in the general prison population).

Plaintiff's claim against LVN Daniel is frivolous, malicious, and fails to state a plausible § 1983 claim for relief because Plaintiff's own allegations establish LVN Daniels was not deliberately indifferent to his serious medical needs. Specifically, Plaintiff's own allegations establish he only cut his hand "a little bit" and that LVN Daniel did treat his small cut, albeit not to Plaintiff's satisfaction. (Complt., ¶¶ 85, 89.) Further, Plaintiff's own medical records, which are attached as Exhibits B and C to the complaint, establish LVN Daniel was not deliberately indifferent to a serious medical need.

Plaintiff's purported Eighth Amendment claims against c/o Jerid are frivolous, malicious, and fail to state plausible § 1983 claims for relief. Plaintiff's allegations fail to raise a plausible excessive force claim because his own allegations establish c/o Jerid applied the force in a good-faith effort to maintain or restore discipline -- to push or shove Plaintiff's hands back into his cell -- not maliciously and sadistically to cause harm, and that it was an isolated push or shove. Further, c/o Jerid was not deliberately indifferent to a serious medical need because Plaintiff's own medical records show he only suffered "several small cuts in his hand", that Plaintiff "appeared well" and expressly admitted he only had "mild pain" and was in "no acute distress," and that his minor injury was promptly treated with 4 or 5 small stitches, and did not pose a significant threat to his health. (*See id.*, Exs. B & C.) Because Plaintiff's own medical records establish his cuts did not constitute a serious medical need or pose a significant threat to his health, Plaintiff's medical indifference claim against c/o Jerid and the other defendants is incurably defective. *See Lambert v. Soto*, No. 10cv1976 AJB (BLM), 2012 WL 928255, *4, (S.D. Cal. Mar. 19, 2012) (finding plaintiff failed to state Eighth Amendment medical indifference claim where his allegations failed to show his leg injury, which was still bleeding when he was returned to his cell, was serious or posed a significant threat to his health); *Nawabi v. Wyatt*, No. CV 08-04385 PSG (VBK), 2009 WL 3514849, *7 (C.D. Cal. Oct. 26, 2009) (finding that plaintiff failed to state an Eighth Amendment violation where he failed "to show how a bloody lip and/or a scratch to his knee" was a sufficiently serious medical condition and plaintiff had no evidence that defendant

"knew of any serious medical risk to plaintiff by not addressing his bloody lip or scratched knee."); *see also Thomas v. Diaz*, No. 1:07-cv-540-AWI-DLB (PC), 2008 WL 227932, *5 (E.D. Cal. Jan.28, 2008) (finding that plaintiff failed to state a claim under the Eighth Amendment for deliberate indifference to his serious medical needs where he alleged that defendant was deliberately indifferent to his needs by failing "to request an R.N. or M.D. to examine plaintiff and for failing to clean and bandage his abrasions/wounds subsequent" to an incident); and *Johnson v. Runnels*, No. CIV S-04-0776 LKK EFB P, 2010 WL 3430369, *16 (E.D. Cal., Aug.30, 2010) (stating that plaintiff submitted no evidence that cuts, abrasions, contusions, and lacerations were the types of injuries that a failure to treat could result in further significant injury or the unnecessary and wanton infliction of pain). Finally, c/o Jerid did not violate Plaintiff's constitutional rights by calling him a bitch because, as already discussed above, "[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]" *Oltarzewski*, 830 F.2d at 139.

Plaintiff's claims against c/o Mikel, c/o Duenaz, and c/o Franscia are frivolous, malicious, and fail to state plausible § 1983 claims because these claims are entirely based upon a plausible § 1983 claim against c/o Jerid. As discussed above, Plaintiff's allegations fail to state a plausible § 1983 claim against c/o Jerid, therefore, his corresponding § 1983 claims against these three defendants also fail to state plausible § 1983 claims for relief.

Plaintiff's claim against c/o Franscia for giving Plaintiff a piece of cotton for a mattress that did not have a cover on it fails to state a claim for relief because Plaintiff's allegations fail to show c/o Franscia did so "for the unnecessary and wanton infliction of pain" or a "deliberate indifference" to a serious threat to the inmate's safety. *Farmer*, 511 U.S. at 834-37. Plaintiff's allegation that the uncovered mattress was "unsanitary" is insufficient because it is conclusory, *Iqbal*, 556 U.S. at 677, and because his allegations also fail to show he was forced to use the mattress for a prolonged period and that it cause him any serious physical harm. *Anderson*, 45 F.3d at 1313-15.

///
///

## Conclusion & Order

For the reasons discussed above, Plaintiff's complaint is dismissed with leave to amend. To the extent Plaintiff still wishes to pursue this matter, and only to the extent Plaintiff believes he can raise a plausible § 1983 claim for damages against a defendant in his or her individual capacity, Plaintiff is granted leave to file a First Amended Complaint ("FAC"). The FAC must be prepared on the Court-approved prisoner civil rights complaint form that is enclosed with this Order. Plaintiff must provide all information requested by the instructions in the FAC. In the interests of clarity, each claim must name only one defendant and the supporting allegations must set forth specific facts that describe exactly what Plaintiff is claiming the defendant did to violate his constitutional rights and identify the precise constitutional right that he is claiming the defendant violated (e.g., Eighth Amendment right against cruel and unusual punishment). Any exhibits must be attached to the FAC, and the pages of the complaint and attached exhibits must be numbered consecutively at the bottom of each page so the total number of pages of the complaint and exhibits can be readily determined and cited with ease. **The FAC must be filed no later than August 6, 2012. No extensions of time will be granted.** Plaintiff is further notified and warned this action will be dismissed without further notice if he fails to file the FAC in the time and manner directed by this Order. Plaintiff is further notified and warned that a FAC that is timely filed but is not prepared in the manner directed by this Order may also be dismissed without further notice.

DATE: July 23, 2012

ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE